MUNICIPAL ASSEMBLY OF SANTA ISABEL, Petitioner and Appellee, *v.* MANUEL NESTOR RODRÍGUEZ, Respondent and Appellant.

No. 4607.   Argued July 9, 1928.—Decided December 14, 1928.

R. *Martínez Nadal* and *Leopoldo Tormes* for the appellant. *Acting Attorney General J. López Acosta* and *Miguel Guerra* for the appellee.

Mr. Justice Hutchison delivered the opinion of the court.

Section 29 of the Municipal Law as amended in 1925 reads in part as follows:

"The municipal assembly may impeach the mayor for the causes stated in this Act, during which impeachment proceedings the facts shall be investigated and considered as well as the legal grounds for and against the complaint, the mayor to be given an opportunity to appear, introduce evidence, and defend himself either in person or through an attorney. The municipal assembly may summon witnesses for the prosecution and for the defense, compel their appearance, administer oaths to them and take their evidence, as well as punish any person or persons for contempt committed against its authority or dignity; it being understood that when after the holding of the said public hearing, the municipal assembly, by vote of two-thirds of the total number of its members, in accordance with section 16 of this Act, declares all or any of the facts charged against the mayor, to be proved, the record in the case shall be forwarded within the ten days following the decision of the assembly to the Governor of Porto Rico, who, within a term of twenty days, shall decide whether or not the mayor shall be removed. The Governor shall serve notice of his decision on the mayor and the municipal assembly. If on the lapse of the twenty days granted the Governor in which to decide, he fails to do so, the municipal assembly may then, by vote of two-thirds of the total number of its members, in accordance with section 16, finally decide, acquitting or removing the mayor.

"The Governor's decision or the decision of the assembly, in the proper case, shall be forwarded immediately to the mayor who, if he deems himself aggrieved may, within the fifteen days following such notification, appeal from the said decision to the Supreme Court of Porto Rico to which the record in the case shall be forwarded without delay, and which shall review the proceedings with regard not only to questions of law involved in the appeal, but also to the facts and the weight and scope of the evidence."

In the case at bar José Manuel Santiago, representing himself to be the president of the municipal assembly of Santa Isabel, transmitted to the Governor of Porto Rico what purports to be a proceeding instituted and conducted to a final determination and verdict by the municipal assembly under authority of the section last above quoted.

On April 27, 1928, the Executive Secretary, by direction of the Governor, referred the matter to the Attorney General for his opinion as to the legality of the impeachment proceedings, and, in the event that such proceedings should be deemed valid, for recommendation as to proper action.

From a letter addressed to the Governor of Porto Rico by an acting attorney general on May first last past we take the following extract:

"The first point to be considered is the legal status of the members of the Municipal Assembly of Santa Isabel who intervened in these impeachment proceedings. The Municipal Assembly of Santa Isabel was originally constituted of nine members, namely, José Santiago Rivera, José Inocencio Colón, Miguel Rivera, Julio Zayas, Tomás Santiago Maldonado, Tomás Santiago Rodríguez, Vidal Moreno, Enrique Rodríguez and Francisco Alvarez Santiago. Of these, five resigned and new members were appointed to take their places. The reorganized Municipal Assembly split again into two factions and five of the members, acting as a majority, proceeded to declare vacant the places of two members belonging to the other faction, and appointed two new men to take their places, making seven in all. One of these, not agreeing with his fellow members, left this band and joined the other side, which left the Municipal Assembly of Santa Isabel with six members on one side, headed by José Manuel Santiago, and three members on the other, under José E. Colón.

"Several court proceedings were initiated by each faction against the other, and finally an injunction was presented by the Mayor in the name of Municipality of Santa Isabel against the six members of the Municipal Assembly under the leadership of José Manuel Santiago, which injunction was decided by Judge Angel Acosta Quintero, acting as District Judge of Guayama, upholding the legality of the acts executed by the six members of the Assembly under the control of José Manuel Santiago.

"These six members, constituting a majority in the Municipal Assembly of Santa Isabel, proceeded to hold session, and after complying with the provisions of the law, declared vacant the places of the other three members belonging to the other side, and, the places being vacant, appointed three new persons to fill the above said positions.

"Under these conditions, and the Municipal Assembly of Santa Isabel having the full quota of nine members, impeachment proceed-

ings were begun against the Mayor of Santa Isabel. Impeachment proceedings were had in accordance with the Municipal Law, and the evidence submitted *prima facie* sustained the charges made against the Mayor.

"Section 29 of the Municipal Law provides as follows:

" 'The mayor may be impeached and removed from office for the reasons hereinafter stated, by the Governor of Porto Rico, but shall be entitled to appeal from the decision of the Governor to a competent district court, which shall review the facts and render final decision as to whether or not there was just cause for removal. . . In case of a vacancy for any reason in the office of the mayor, the municipal assembly shall proceed to appoint a substitute, by a vote of at least two-thirds of the membership thereof, and when for any reason it is impossible to obtain such vote, then such substitute shall be appointed by the Governor of Porto Rico. . .'

"Conditions in Santa Isabel have reached a climax, and some drastic measure must be taken in order to protect the interests of the public and the finances of the community. An investigation shows that the municipal administration is a complete failure, that public services have been abandoned, and that a complete state of corruption and absolute disregard for the rights of the citizens exists. The records show that *prima facie* the Municipal Assembly has authority to act, and regardless of whatever decision the courts may render in consideration of any appeal that may be filed, I believe it is absolutely necessary and indispensable that some immediate step be taken to protect the interests of the community and the rights of the citizens of Santa Isabel.

"I respectfully recommend the following:

"1. That the decision of impeachment of the Municipal Assembly of Santa Isabel be upheld.

"2. That their acts being *prima facie* legal, in accordance with section 29 of the Municipal Law, the Mayor of Santa Isabel be removed by Your Honor, and a substitute be appointed by the Municipal Assembly of Santa Isabel, and if two-thirds of the members can not agree on a candidate, that said substitute be appointed by the Governor of Porto Rico.

"3. That the Auditor of Porto Rico be requested to make an investigation of the financial condition of the Municipality of Santa Isabel, and to stop payment of those transactions executed by the present officials which do not comply with the requirements of the law."

Upon receipt of this communication the Governor of Porto Rico concurred in the opinion of the acting attorney general and decided that the removal of the mayor was justified. From this decision the mayor has appealed to this court.

Section 29 of the Municipal Law as quoted by the attorney general seems to have been taken from the laws of 1924 prior to the amendment of 1925, *supra*.

The decision of the Guayama District Court referred to by the acting attorney general was rendered after a hearing upon an application for a preliminary injunction. It was based primarily upon the proposition that a writ of injunction was not the proper remedy, and to that extent only was affirmed by this court. (*Municipal Assembly of Santa Isabel v. José Manuel Santiago et al.*, 38 P.R.R. 590).

The five members who declared vacant the offices of two members of the opposing faction and elected their successors, thus forming a group of seven, took this action at a special session called by the five. The member who went over to the rival faction was one of the five. If the action of the five in declaring and filling vacancies was unauthorized by law, then the six, only four of them being duly qualified members and these four not constituting a quorum, had no power to declare, to create or to fill other vacancies.

The by-laws of the municipality ordain that the call for special sessions of the municipal assembly shall specify the matters to be considered and that no other matters than those so specified shall be considered at such special session. See also section 17 of the Municipal Law, Laws of 1925, page 696, and *People v. Oliveras*, 33 P.R.R. 707, 717.

The District Court of Guayama, in the injunction proceeding above mentioned, found that the call now in question specified, among other things, the advisability of declaring vacant the offices of president and vice-president of the Municipal Assembly of Santa Isabel, "the filling of vacancies

of its members," and, in the event of declaring such offices vacant, the naming of new incumbents. The Secretary-Auditor of the municipality certifies that the only matters enumerated in the call were, first, the advisability of declaring vacant the offices of president and vice-president of the said assembly; second, in the event of such vacancies the question of filling the same, and third, the ordering of an investigation of the municipal treasurer and director of schools. In a letter to the Auditor of Porto Rico the Municipal Secretary-Auditor also says that during the afternoon of March 9, according to information received by him, José Manuel Santiago and others unknown to the secretary-auditor entered his office, forced the cabinet containing the minutes of assembly meetings and other municipal documents, removed, carried away, and continued to retain the possession of, said papers, making undue use of the same; that at a hearing before the District Court of Guayama on March 28th José Manuel Santiago gave up one of the stolen documents, a summons with a return endorsed thereon by District Chief of Police, Guillermo Soldevila, citing the assemblymen who were absent from the meeting of March 1st; that the document had been altered by adding thereto the words "to fill vacancies" and "to consider resignation of members"; that Soldevila would be the best witness to the contents of the call for the meeting held on March 1st, and that the writer had in his possession documents showing the contents of such call signed by five members of the municipal assembly, naming them.

The extremely awkward insertion of the words "the filling of vacancies of its members," breaks the logical sequence of thought and suggests an interpolation. To that extent it lends color to the statement of the secretary-auditor. But, for the sake of argument, it may be conceded that the special session was called for the purpose of filling vacancies in the offices of members. Even such a call could

hardly be construed as notice to members that the vacancies so referred to were to be created at the special session in the event of their failure to appear when summoned by an officer.

The district judge further found that "the arrest and appearance of assemblymen Miguel Rivera and Mauricio Anés were ordered for refusing to sign the call and for fail-ing to appear, and that upon the return of said order of arrest they refused to appear because it was their intention not to attend this session, for which reason their offices were declared vacant, and it was shown that assemblyman Miguel Rivera was in his store and that the other assemblyman, Mauricio Anés, was in the café of Fortunato Blanco, as ap-pears from the petitioner's own evidence."

The secretary-auditor of the municipality insists that the order of arrest was returned not found in so far as Miguel Rivera and Mauricio Anés were concerned; that these gentle-men were never in fact arrested nor given an opportunity to be heard and that no charges were even formulated against them. But here also it may be conceded, without holding, that Anés and Rivera were found by the chief of police and declined his more or less urgent invitation to attend the meeting. It is not pretended that they were placed under arrest by the chief of police or that they were brought before the assembly or that they had any notice of the action about to be taken by the assembly.

Section 19 of the Municipal Law, Laws of P. R. 1925, page 698, reads as follows (italics ours):

"*That should it be impossible to hold any session of the assembly for lack of quorum,* the members present may compel the absentees to appear, by a written order to any marshal of any insular court or to the chief of police for the arrest and conduction of such absentees to the session hall, save in case of physical disability satisfactorily proven. If, notwithstanding the arrest, such member insists on ab-senting himself, his office shall be declared vacant."

858

Whether or not a vacancy may be declared in the office of an absent member without the formality of an actual arrest and an enforced appearance, and without an opportunity to be heard upon the question of physical disability or to challenge the return endorsed upon the order of arrest or the verbal report of the officer whose duty it was to make such arrest, is another matter which need not be determined at this time.

The lack of a quorum is a condition precedent to an exercise of the power here conferred upon the municipal assembly. That condition did not exist in the instant case. As we have already shown, the action of the municipal assembly now under consideration was taken by a majority of all the members, and, therefore, there was no question as to any want of a quorum. If a majority of all the members can compel the attendance of absentees or declare a vacancy in the office of an absent member upon failure of such member to attend a single special session, that power must be derived from some source other than the legislative enactment relied upon herein.

We are therefore constrained to hold that the action of the Municipal Council of Santa Isabel in declaring vacant the offices of Miguel Rivera and Mauricio Anés, and in endeavoring to fill the supposed vacancies so declared, and all subsequent steps which culminated in the attempted impeachment and removal of the mayor, Manuel Néstor Rodríguez, were *ultra vires* and void.

The decision appealed from must be reversed.